Mr. Al-Salam? Yes. Thank you, Your Honor. Ramsey Al-Salam for Zillow. Zillow requests that the Court vacate or reverse the Board's decision finding the 674 patent, or the specific claims of the 674 patent, invalid. What the 674 patent discloses is a computer system that can automatically generate an estimated value for a property or a house. It does it without having to have manual selection of comparables, or manual selection or adjustment of those comparables. The computer system itself generates automatically an estimated value for the house. Now, what can you tell us about the patent that gives us some information about automatic valuation? Because the language in the claims is not the construction that you want, right? The automatic valuation is described in this manner. In Column 1, the patent disparages appraiser-involved valuations, and it does it on four grounds. It says they require an inspection of the property, they are subjective, they're expensive, and they're time-consuming. So that's how it characterizes one type of valuation, these appraiser valuations. Then it goes on to say you can have an automatic valuation, but it would generally work on a public database, and you get no input from the owner of the house. Then in Column 4, lines 21 to 24, after it has described the— Wait, that claim itself says you get input from the owner of the property, right? Well, I'm sorry. Let me just explain that so the court understands it. There is an automatic valuation. What the patent contemplates is there's an automatic valuation without any input from the homeowner. And then the homeowner puts in additional input to get a refined valuation. Let's talk about it in practice. So the automatic valuation, I mean, this is the key, right? Correct, that initial— Now, there's no algorithm that describes the computer program. You're now wanting us to read into this claim a limitation that describes what the program is, right? No, Your Honor. I mean, the patent describes the algorithm. There is a forest tree type of algorithm that takes comparable sales and then automatically determines a value for a house. That's the initial valuation, initial automatic valuation. Then what the customer does, or the user, the homeowner, is can then revise the assumptions associated in the database to get a refined valuation. But why isn't that the precise construction that was used? Well, the construction that was used was related to a calculation. Let me, again, so there's at least three problems with the board's construction. The patent, again, disparages appraiser-based valuations as being subjective, slow, expensive, and requiring inspection. And then it characterizes an automatic valuation as being the very opposite. Column four, lines 21 to 24, after explaining its algorithm for an automatic valuation, it says because there's no appraiser involved, it's quick, it's inexpensive, and it's subjective. Those are the way it characterizes the automatic valuation in the patent, which is directly opposite of the appraiser-based valuation that it just disparaged. Then it goes on to explain, after you get this automatic valuation, you allow the homeowner to get a refined valuation, essentially correcting problems in the database. Because that automatic valuation just worked on what was in the database. There was no human intervention other than putting in the address. The figures in the patent disclose... ...that you wanted us to read automatic valuation to be the same as use of automated valuation model. It is an automatic valuation model. It's a mathematical model that does an automatic valuation. AVMs, which is the acronym for automatic valuation models, have certain characteristics. One of their characteristics is there's no human being that has to pick the comparables. All of these valuations involve looking at comparable sales and then creating a valuation for the subject property based on comparable sales. Besides you're telling us all of this, this is nowhere in the patent, right? You're telling us that in the art, something called an automatic valuation model is a very explicit thing and not referred to in the claims. It's not even named in the claims, let alone explained. There's one reference in the spec in terms of one embodiment, right? That's it, right? So where do we get that when you use the term automatic valuation, there's the public notice? The public is on notice that we were dealing with a very explicit technical model. It doesn't have to be an explicit technical model, but the patent tells us the characteristics of an automatic valuation. That it's fast, it's cheap, it's objective, and there's no appraiser involved. That's what the patent describes as the features of an automatic valuation. Now it does itself say there's only one problem with that automatic valuation and that is it's not always accurate. Wait, so you don't really want the automatic valuation model put into the claim? What you want is the presence of an appraiser excluded from the claim? Yes, but more specifically, this is what I want. That all I want is the actual definition to follow the language of the valuation being automatic. Not a calculation associated with the valuation. The valuation is automatic. This is what the board did. The board said because we can't find an express definition, or they say not an implicit definition, though I would argue the definition is implicit because the criteria are described, they said we're going to turn to the dictionary. In the dictionary, they looked at two definitions for automatic and valuation. The automatic valuation is fine with us. It's no human involvement. That's what automatic is. We don't dispute that. What they did is they aired when they construed valuation because they called it a calculation. This is on A7 and A8 where they set forth the definitions. The definition of valuation didn't include the word calculation, but what they did then is conflated it to say if you have any calculation that's automatic, that's part of a valuation, then you have an automatic valuation. Under their construction, and it's really the way they applied it. What are you telling us it should be construed? I guess I'm a little, because I had the same concern that Judge O'Malley had. I thought before the board you were advocating automatic valuation model, which is something very explicit, right? I don't know if it's explicit. That's where we've sort of gone off track. The problem I'm having is that we've got a public notice function here, and we've got automatic valuation, and you're criticizing the PTAB for using the normal ordinary meaning of those terms. Then you're advocating something else, which is automatic valuation model, and we've got to discern what that means too. How on earth are we supposed to be able to conclude that this is a definite claim? First of all, I want to be clear. I don't think they adopted the ordinary meaning, and they certainly didn't adopt the ordinary meaning within how the patent describes an automatic valuation. Perhaps, I'm fine if we don't adopt the term automatic valuation model, but what I am not fine with is adopting automatic valuation to encompass valuations that are not automatic. So how would you, if you had to redefine, if you had to amend your claims to redefine them to address the concerns that have been raised, how would you redraft the claim? The claim doesn't need to be redrafted. By the way, some of the claims say model. Some of the dependent claims say the automatic valuation is a geographically specific model, and the only embodiment, as their expert admitted, the only embodiment disclosed is an automatic valuation model. Model here only means it's a computer program. It's a computer program that works on a database. Now this is in stark contrast to the two primary references. Dugan and Kim both involve appraiser tools, both involve human involvement in the valuation. So in the Dugan valuation, the human has to select the comparables, and perhaps it's easier to think about all of these valuations have three primary steps. To do these types of valuations, you have to select comparables, you have to adjust comparables, and then you have to generate a value. In the automatic valuation of the patent, all those three steps are done automatically. Those are all part of the valuation. The only thing the user has to do is put in the address, his or her address. Well, I think the patent office will tell you, and we'll find out if we're right about that in a few minutes, that Dugan and Kim don't require the user to be involved in adjusting the valuation methodology. Oh, no, they do. Disclosures, there are at least embodiments that don't require user intervention in the valuation itself. Well, the valuation is only the final calculation. The board itself admitted, for example, that they did not, for example, in A-28. What do you mean the valuation is the, I'm sorry, what did you say? All the board relied upon is the final calculation in the valuation was automatic. The board has never taken the position that the Dugan and Kim patents have the entire valuation being automatic. The valuation includes selecting comparables and adjusting comparables. For example, Dugan expressly requires the appraiser, the only disclosed, expressly disclosed user, when I say manually, to click on which comparables are to be used in the valuation process. So that part of the valuation process involves human involvement. Both Dugan and Kim, I mean Dugan has the users, the buyers themselves, filling out forms. Those are forms 6A through I that have all kinds of fields that are paper forms. That's part of the valuation process. It's not automatic. So tell me, you say you don't have to redraft the claims because automatic valuation means what you say. So if you had to define automatic valuation in the specification, how would you do it? I would do it as it was done, which is that automatic valuation is done without appraiser involvement. It's cheap, objective, and fast. Those are all completely subjective terms. I mean cheap, fast. There has to be a database. There has to be a database. All right, and so where do the comparables come from? The comparables are, well, as the patent explains, the comparables are based on public tax databases or MLS databases that show sales. They show sales and attributes of properties. So what you have is you have a database of sales that show the attributes of properties and what they sold for. Now what an appraiser does is sort through those sales manually and figures out which are the most closest comparables, and then the appraiser adjusts the sale price of those comparables to find, then to estimate a value for the subject property. In the patent, all of that's done automatically. All the user does is put in his or her address, and this is on estimates on Zillow as the figures show, and you just get generated an automatic valuation. The problem really comes down to the board having substituted calculation for valuation, and then by saying if any part of the valuation is an automatic calculation, it's automatic valuation. But even if we accept your proposition, how is this patent not indefinite then? I'm not sure what you mean, which part would be indefinite. There's a clear embodiment that shows what automatic valuation is, and it's distinguished from appraiser-based valuation where there has to be human involvement in selecting comparables and inspecting the property. Okay, why don't we hear from the other person. Thank you. We'll change our results. Good afternoon, your honors. May it please the court. The board correctly applied the broadest reasonable interpretation in construing the phrase automatic valuation, and that standard was recently approved by this court for inter-parties review in a case called In Re Closo Speed Technology, which was issued last month. And under that standard, the board looked to the specification and found that it broadly describes a computer system for performing home valuations. Specifically at figure one and the description thereof, it talks about just a generic sort of computer that performs home valuations. Do you mean broadest reasonable interpretation here? I mean, everything with the board's analysis and so forth struck me as, you don't need to have that loose standard, that more generous standard, to get affirmed, do you? Is that your view? I mean, as opposed to... That the board could give it its ordinary meaning and still come out the way the board did. Well, I think possibly, yes. But the board basically looked at both, and both were consistent. I mean, it looked at the specification and what was taught in the specification, which is a broad disclosure. It describes the invention as a software facility for automatically determining a current value of a home, and that's it. But doesn't it repeatedly say, without appraisers? I mean, there can't be much doubt that throughout, that Pat has talked about appraisers not being involved. And the board dealt with that, not with this term, but actually when it construed another term in the claim, which is the claim relevant to the user of the system, it specifically excluded appraiser from that definition. So the term, user knowledgeable about the distinguished home, which is the one that's providing input, it specifically excluded an appraiser. Right, but that's a different part from the past. That had to do with who's inputting new information for purposes of amending the automatic valuation. When we're talking about the automatic valuation, how can the patent repeatedly say there's no appraiser involved in inputting anything into the relevant database for purposes of calculating this automatic valuation, and yet the board construed a claim in a way that encompasses appraisers? What the patent does, which is actually very similar to what Dugan does, is it describes in the beginning of the patent at column one, it talks about prior art ways of appraising properties, and first it talks about appraiser methods, which were simply non-automatic methods where appraiser was manually sort of appraising properties. And then it talks about fully automated systems, starting at line 45, and then it distinguishes and says, you know, basically this is kind of a hybrid. This is something that is essentially an automated system, but allows some minimum input. And interestingly, Dugan does essentially the same thing. If you look at the beginning of Dugan at columns one to two, it's just talking about appraiser-based approaches, then talks about beginning in the middle of column two, going on to column three, talks about completely computer-based systems, and then goes on, when it summarizes the invention, their system is one, particularly when you look at the bottom of column four, going to column five, it says, you know, our system is different. In fact, it describes the same problems with automated systems and with appraiser-based systems. It says appraiser-based systems are subjective in nature, wholly computer-implemented systems are efficient time-wise, but aren't so accurate. And so what it does is, again, the same sort of thing. It allows a limited amount of input from the user, and the user, whether it be an appraiser, a buyer, or a seller, in fact, it contemplates all of those types of users. It talks at line 67, it talks about a buyer implementing these points, and then on column five, over on column five at line eight, it talks about a seller. So there's really no difference here in terms of what these systems are doing. They're basically allowing a limited amount of input to what is otherwise a fully automated system. The point we're trying to figure out is where the automated evaluation comes from. Do you see a difference between a calculation and an evaluation? Well, the board's construction was not just simply a calculation. It was just calculating a value. So it's basically calculating the value of a home, which is essentially the same thing as evaluating a home. So you see no difference between a calculation and an evaluation? I don't see any difference in the board's construction from what is taught in the 674 patent. And notably, there's no recitation of automated evaluation model. There's no recitation of AVM in the specification. The patent owner did not act as a lexicographer or did not attempt to define automatic evaluation to be expressly or implicitly limited to AVM. So there's simply nothing to suggest that this should be so limited. And that is, as Judge Prost indicated, it's fully consistent with the ordinary meaning for the term and there's really just no basis for the board to construe this more narrowly. Are there any additional questions? Thank you. The board set a calculation of a value. That's how it interpreted it. How it applied it was that if there's any part of the valuation calculation that's automatic, then it's an automatic valuation. There's no question Dugan has much significant human involvement in the valuation process. Admittedly, Dugan and Kim criticized automatic valuation models. They both criticized computerized models that do automatic valuations and they both criticized them for being too objective. So both Dugan and Kim say, we're going to make it more subjective. How does that help your case? I mean, if they came beforehand, then they're distinguishing prior art and saying we're different. You're saying the automatic valuation model was in the prior art? We didn't invent automatic valuation models. They're well known in the prior art. Both experts said it. It's clear. Every one of these references acknowledges it. What is your invention? This is what the invention is. It's giving the user of the home access directly to an automatic valuation model and letting him or her adjust the results to then change the results to get a more refined valuation. To be clear, Dugan and Kim never have an initial automatic valuation. So this invention is something exists in the prior art and you're letting a user go in and make adjustments? Yes, a homeowner, to adjust it, to get quick, inexpensive. If you know Zillow, Zillow is the first company that ever allowed a homeowner to have access to a computer system on the internet where they could get an automatic calculation of the value of their property and then refine it because it's based on a database that might have errors. Then they could refine it to get a refined valuation. That is the invention that's disclosed in claim. Neither Dugan nor Kim have any initial automatic valuation. They start out. They create a database and they play around with things, but their whole goal is to get a very subjective evaluation generated. There's not an objective, immediate, initial automatic valuation. And this is just like, Your Honor, it's just like the Abbott diabetes case. In that case, the court found that the board had gone beyond the broadest reasonable interpretation for the electromechanical sensor because the specification disparaged sensors that had cables and wires and the only embodiment had no cables and wires. Here, the patent disparages valuations that require appraisers and require substantial input and are slow. And then it says the one embodiment it has is purely automatic, the entire valuation. Thank you, Your Honor. Thank you. Thank both counsel and the cases submitted. And that concludes our proceedings for this afternoon. All rise.